UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-61367-CIV-COHN/SELTZER

ANITA CORMACK,

    Plaintiff,

v.

NORTH BROWARD HOSPITAL DISTRICT
d/b/a BROWARD HEALTH,

    Defendant.
_____/

## OMNIBUS ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE
## ORDER SETTING CASE TO START TRIAL ON SEPTEMBER 1

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment [DE 61], Defendant's Motion to Strike Portions of Plaintiff's Opposition [DE 80], Defendant's Motion to Strike Plaintiff's Unsworn Declaration and Portions of Appendix B and Appendix C [DE 83]. The Court has carefully considered all of the parties' submissions, has heard the argument of counsel at a hearing held on August 21, 2009, and is otherwise fully advised in the matter.

### I.  BACKGROUND

Plaintiff Anita Cormack ("Plaintiff") filed this complaint in federal court against her former employer, North Broward Hospital District, d/b/a Broward Health ("Defendant") alleging claims for retaliation under the Age Discrimination in Employment Act ("ADEA") (Count II);[1] retaliation under Title VII as to protected activity related to alleged gender discrimination (Count III); age discrimination under the

---

[1] The Aramark Defendants and Count I were previously dismissed by Plaintiff.

Florida Civil Rights Act ("FCRA") (Count V)[2]; and retaliation under the FCRA (Count VII).[3]

Plaintiff Anita Cormack, a woman in her sixties, worked as Patient Food Services Manager at Broward General Medical Center ("BGMC") from 1988 until her termination in 2006 (with a total of over 30 years working at BGMC). In 2005, Plaintiff, though employed by Defendant, reported to Robert Boo, an Aramark Regional Manager who had started work at BGMC on May 24, 2005. Since 1996, Aramark had gradually taken over the functions of the food services via contract with the Hospital District. Defendant asserts that Plaintiff was the last Hospital District employee with her title. In early 2005, patient surveys and internal audits of the food services operations showed declines in Plaintiff's department. Plaintiff herself testified that she had been documenting these declines since Aramark had instituted a new menu in January of 2005.

Within days of starting at BGMC, Boo met with Plaintiff and gave her specific job goals. Plaintiff asserts that within his first 45 days, Boo demoted her on the organizational chart, advertised for someone to replace her on the internet, made plans to redesign the work area and implement new tray procedures while she was on vacation.[4] Defendant asserts that Plaintiff's position and duties did not change and the job posting was a newly created position. On June 14, 2005, Boo sent Plaintiff an

---

[2] The Complaint does not contain a Count IV.

[3] The Complaint does not contain a Count VI.

[4] Plaintiff's 440 page deposition is found at DE 64-2 though DE 64-9. Many exhibits are located toward the end of DE 64-5. Plaintiff's Declaration is at DE 66-2 and DE 66-3.

email summarizing their May 27, 2005 meeting and requesting various reports from her as soon as possible.  Defendant's Exhibit 5 to Plaintiff's deposition [DE 64-5].  On June 27, 2005, Plaintiff was assigned a new full time "job coach" to support her to improve her proficiencies in her job performance, at Aramark's expense.  On August 22, 2005, Plaintiff's job coach was changed to Meghean Faul, a recent Aramark hire with a similar job title to Plaintiff.  Plaintiff asserts that Faul, whose sister-in-law worked for Defendant, is the younger replacement of her that supports her age discrimination claim.  Plaintiff complained around that time to Roland Benson, Director of Diversity, that she was being pushed out of her job.

On September 1, 2005, Plaintiff received a negative Performance Appraisal from Robert Boo, which Plaintiff claims was not given in accordance with Defendant's normal procedures.  Plaintiff was placed on a Performance Improvement Plan ("PIP").  Plaintiff asserts in her declaration that she raised the issue of age discrimination with Boo at that time.  On September 2, 2005, Boo sent an email to someone higher up in Aramark that he thought he was going to be sued due to Plaintiff's reaction to her negative review.  Plaintiff's Exhibit 10 [DE 66-5 at p. 18 of 30].  Boo states that "we can't have Meghean lead the area of patient services yet as we have to now put Anita on a performance plan and not do anything to her duties or responsibilities.  Meghean can only act as a coach or support for her.  Otherwise her claim of discrimination would be validated."

Per the PIP, Plaintiff had weekly progress meetings with Boo and Letitia Woods from Human Resources.  On October 19, 2005, after seeking a copy of the Aramark-BGMC contract, a request which was initially denied, Plaintiff filed a complaint with the

3

Equal Employment Opportunities Commission ("EEOC") alleging age and gender discrimination.[5] Meanwhile, the weekly PIP meetings stopped in November but recommenced in January of 2006, with Defendant asserting that Plaintiff kept admitting that her department was not meeting her goals. Plaintiff asserts that the goals were unreasonable, set up for her to fail, and part of the pretext of her discrimination. Plaintiff asserts that on March 26, 2006, she was called to Roland Benson's office (Benson is Director of Diversity at BGMC). Benson allegedly told her that the EEOC dismissed her 2005 charges and that "we won and you lost" and that she could either resign or retire.

Boo left Aramark and the food services industry in March of 2006, recommending before he left that Plaintiff be terminated. Meghaen Faul became the interim Food Services Director in place of Boo. Defendant asserts that Plaintiff's performance still did not improve. Gail Gillenwaters recommended to the District's CEO that based upon Boo's recommendation, her own personal observations, the observations of Human Resources representative Letitia Woods (who had attended the PIP progress meetings with Plaintiff and Boo), coupled with the fact that no other hospital in the District still had someone in Plaintiff's position and the position was slated to be eventually phased out, that Plaintiff be terminated. Plaintiff was terminated on April 26, 2006 and filed a second claim of discrimination with the EEOC on August 15, 2006, eventually resulting in a right to sue letter which led to this action.

Defendant has moved for summary judgment on both the age discrimination and the retaliation claims, as well as to strike certain exhibits submitted by Plaintiff in

---

[5] This complaint was dismissed by the EEOC on February 28, 2006.

opposition to the summary judgment motion.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

## B.  Age Discrimination under the FCRA

On her claim for age discrimination under the FCRA, the Florida courts have found that a court may use the Title VII and ADEA legal standards for state claims as well.  Harper v. Blockbuster Entertainment Corporation, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing Ranger Ins. Co. v. Bal Harbour Club, Inc., 549 So.2d 1005, 1009 (Fla. 1989).  Under the ADEA, Plaintiff bears the burden of proving that age was the "but-for" cause in the discrimination, and must establish a prima facie case of discrimination. Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343 (2009).  This burden may be met by presenting circumstantial evidence via the McDonnell Douglas test,[6] which allows a party to introduce circumstantial evidence that raises a rebuttable presumption of intentional discrimination.  Myra Walker v. Nationsbank of Florida, 53 F.3d 1548, 1555-56 (11th Cir. 1995);  Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989). Applying the McDonnell Douglas framework to the ADEA, a plaintiff establishes a prima facie case of age discrimination by showing the following:  (1) she was a member of a protected group, that is, at least 40 years of age; (2) she was subject to an adverse employment action; (3) she was qualified for her current position; and (4) was replaced by someone outside the protected group.  Zaben v. Air Products & Chemicals, Inc., 129

---

[6] McDonnell Douglas v. Green, 411 U.S. 792 (1973).

F.3d 1453, 1457 (11th Cir. 1997).  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted).

If a prima facie case is shown, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]."  Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998).  If this is done, then the plaintiff may attempt to show that the proffered reason was merely a pretext for the defendant's acts.  Id. at 1311; see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  Id.  However, the Supreme Court has held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2109 (2000).  Following Reeves, the Eleventh Circuit Court of Appeals held that "if the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."  Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000).

### 1. Age Claim -- Prima facie case

Defendant concedes that Plaintiff is in the protected class and suffered adverse

action by her termination.[7]  Defendant argues that Plaintiff was not qualified, given her poor performance, and that she was not replaced by a younger person because her position was eliminated.  Plaintiff argues that as a discharged long-time employee, she need not prove her qualifications for her prima facie test.  Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1360 (11th Cir. 1999); Rosenfield v. Wellington Leisure Products, Inc., 827 F.2d 1493, 1495, n.2 (11th Cir. 1987).  "Allegations of poor performance against plaintiffs discharged from long-held positions may be properly considered, only after a prima facie case has been established, when a court evaluates the pretextual nature of an employee's proffered nondiscriminatory reason for termination."  Damon, 196 F.3d at 1360.  The Court will follow this case law.

With regard to her replacement, Plaintiff argues that her duties were taken over by the much younger Meghean Faul, despite the fact that Faul was always employed by Aramark, not Defendant.  The record is clear that although Plaintiff was always employed by Defendant, she was evaluated and supervised by Aramark employees.  Meghaen Faul was hired while Plaintiff was still employed, in a newly created position, but her duties overlapped considerably with Plaintiff.  It is undisputed that Faul at one point was Plaintiff's "job coach," to help Plaintiff with the more technological aspects of her position.

The Court concludes that there is at least a genuine issue of disputed material fact as to whether Faul was intended to replace Plaintiff and did in fact replace Plaintiff.  Robert Boo's email of September 2, 2005, following his performance review with

---

[7] The Court concludes that the only adverse action suffered by Plaintiff was her termination, not anything before April 26, 2006 (discussed further under retaliation in subsection II.B).

Plaintiff, provides an inference that Faul was intended to replace Plaintiff.  However, the Court also notes that upon Boo's departure in March of 2006, Defendant was able to promote Faul to Boo's position and eliminate Plaintiff's position.  Thus, Faul does appear to have taken over Plaintiff's duties, though she clearly had many more duties after Boo left.  These pieces of evidence and the inferences that Plaintiff is afforded on summary judgment lead the Court to conclude that summary judgment is not warranted on the issue of a prima facie case of age discrimination.

### 2.  Defendant's Legitimate Reasons for Termination and Pretext

Defendant has put forth sufficient legitimate reasons for Plaintiff's termination, including that Plaintiff's performance had declined over the prior year, that Plaintiff had been given months to improve under the PIP, and that her position was being eliminated as she was the last person to hold that job with the District.  Plaintiff asserts many reasons to show that the foregoing was mere pretext to create genuine issues of material fact.  Younger workers, such as Kimberly Causey, a thirty-something Clinical Services Manager who shared responsibilities with Plaintiff and therefore should have had some shared responsibility for the sub-par performance of food services, were not disciplined and treated more favorably.  Second, Plaintiff asserts that her supervisor, Robert Boo, should have followed the District's corrective procedures regarding her performance rather than starting with the PIP.  Plaintiff argues that Boo's email statement about being sued provides an inference that he believed he was not following proper procedure in starting the PIP.

Third, Plaintiff argues that her actual performance in all aspects of her job, unrelated to technology, was not deficient.  Fourth, Plaintiff asserts that the different

explanations given by Defendant as to Plaintiff's termination to the EEOC and later in this action cast doubt on all nondiscriminatory reasons. Plaintiff alleges that Defendant initially relied upon the job elimination reason, including when they offered Plaintiff a severance package upon her termination. Later, when the lawsuit was filed, Plaintiff alleges that Defendant shifted to a poor performance reason. The Court does not find that Defendant has shifted its position at all, as a review of the EEOC responses by Defendant (subject to a motion to strike), demonstrate that Defendant has consistently mentioned both reasons for termination. The two reasons are not mutually exclusive.

     In her sur-reply, Plaintiff points to errata sheet changes of testimony by Benson, Boo and Gillenwaters as additional evidence of pretext in the change in the reason for termination from performance reasons to job elimination. Plaintiff also can point to the alleged statement of Benson that upon the EEOC's dismissal of her initial claim, that she should "resign or retire." While that statement can plausibly be understood to have no discriminatory or pretextual nature to it, since the EEOC complaint was in fact dismissed, this Court does not sit as a factfinder in this instance. Furthermore, the timing of the initial hiring of Meghean Faul to a newly created position and her use as Plaintiff's job coach also has a legitimate explanation that Aramark (and Defendant) truly wanted to eliminate Plaintiff's position and shift those duties to an Aramark employee. Yet this act could have been part of an effort to replace Plaintiff with a younger employee based upon her age.

     The Court therefore concludes that Plaintiff has shown that Defendant's reasons for termination could be pretextual. That her position was eliminated but her duties immediately taken over by a younger employee who may have been hired just for this

purpose creates a genuine issue of material fact regarding whether Defendant's articulated reason of job elimination is pretextual.  Second, the fact that younger employees were not subject to discipline for the poor performance of Plaintiff's department, combined with Boo's comments about her performance review, and the alleged procedural deficiencies in that review likewise create a genuine issue of material fact regarding whether Defendant's articulated reason of poor performance is pretextual.  The Court will therefore deny the motion for summary judgment as to the age discrimination claim under the FCRA.

### C.  Retaliation

To establish a prima facie case for retaliation under all of the causes of action alleged in the Complaint, Plaintiff must show that: "1) she engaged in protected activity; 2) her employer was aware of that activity; 3) she suffered adverse employment action; and 4) there was a causal link between her protected activity and the adverse employment action."  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).  "To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [her] protest;' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed."  Holifield, 115 F.3d at 1566 (11th Cir. 1997) (quoting Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989)).  "To meet the causal link requirement, the plaintiff 'merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Holifield, 115 F.3d at 1566 (quoting E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993)).  However, "[t]he plaintiff must at least establish that the employer was actually aware of the protected

expression at the time the employer took adverse employment action against the plaintiff" and "[t]he employer's awareness of the statement may be established by circumstantial evidence." Holifield, 115 F.3d at 1566 (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993); Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1524 (11th Cir. 1991)).

Plaintiff argues that she was demoted and treated differently after she made her first EEOC claim. Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard. Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (citations omitted).[8] The Gupta decision used the standard that an adverse action "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta, 212 F.3d at 587 (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir. 1997)). The United States Supreme Court has stated that a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotations omitted). The Eleventh Circuit has further held that job performance memoranda unaccompanied by a more tangible form of adverse action such as a loss in benefits, ineligibility for promotional

---

[8] For some decisions from within this Circuit concluding that no adverse action occurred, see e.g. Graham, *supra*; Blalock v. Dale County Bd. of Educ., 84 F.Supp.2d 1291, 1310-11 (M.D.Ala. 1999); Pennington v. City of Huntsville, Ala., 93 F.Supp.2d 1201, 1220 (N.D.Ala. 2000).

opportunities, or more formal discipline, are not adverse employment actions. Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239-41 (11th Cir. 2001).

The Court agrees with Defendant that Plaintiff did not suffer any adverse action until her termination in April of 2006, a period of six months from her protected activity of filing a charge to an alleged adverse action.  Plaintiff argued at the motion hearing that she was not relying upon just temporal proximity for her causation argument but the "other" actions which indicate pretext, such as Boo and Benson's[9] comments, the hiring of Meghean Faul, the (allegedly) procedural deficiencies of her negative performance evaluation, and the (allegedly) shifting reasons given to the EEOC for Plaintiff's termination all serve to somehow extend the protected activity from October 2005 into 2006.   Plaintiff even alleged that she complained of discrimination directly to Boo at her September 1, 2005 meeting, just one day prior to her negative performance evaluation.  This event, and the hiring of Meghean Faul, preceded Plaintiff's filing of the EEOC claim for age and gender discrimination on October 19, 2005.  Acts which precede protected activity cannot logically form the basis of causation of an adverse action.  Therefore, even assuming all disputed facts in Plaintiff's favor, none of this evidence shows that Plaintiff was subjected to an objective adverse action under the Gupta standard after she filed her EEOC complaint in October of 2005.[10]

---

[9] Benson's gloating comment regarding the dismissal of her initial EEOC charge may or may not be evidence of pretext, but it does not constitute an adverse action.

[10] In her written papers, Plaintiff at one point alleges that her negative performance evaluation prevented her from qualifying for a bonus.  This argument was not explained further at oral argument.  Absent case law to the contrary, the Court finds that since an employee is not entitled to a bonus per se, and a negative performance review without a change in salary or benefits is not an adverse action, Plaintiff has not shown an adverse action in this case (other than her eventual termination).

What remains is a six month gap from her protected activity of filing a complaint in October 2005 while still employed and her termination in April of 2006 after the initial EEOC complaint was dismissed. The Eleventh Circuit has found that a seven month gap is insufficient as a matter of law, Sierminski v. Transouth Financial Corp., 216 F.3d 945, 951 (11th Cir. 2000), while several other courts in Florida have found 90 days to be insufficient. Gaston v. Home Depot, 129 F.Supp.2d 1355, 1377 (S.D.Fla. 2001) (Judge Gold) (three to five months insufficient); Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (stating that United States Supreme Court has cited with approval decisions in which a three to four month disparity was insufficient to show casual connection) (citing Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

The Court therefore concludes that Plaintiff has failed to show a prima facie case of retaliation. Her protected activity on October 19, 2005 (or even September 1, 2005), was not casually linked to her termination in April of 2006. In fact, Defendant seemed to carefully document (alleged) deficiencies in Plaintiff's performance for nearly a year before her ultimate termination. While these actions may or may not be pretext for age discrimination, they did not rise to the level of an adverse action, nor provide a causal link for retaliation to any protected activity. The Court will grant summary judgment to Defendant on Counts II, III, and VII.

### D.  Motions to Strike

Defendant seeks to strike Parts II and III of Plaintiff's Appendix A [DE 66-3 and DE 66-4] which contain 63 pages of EEOC documents contained in the EEOC investigatory file. Defendant argues that these documents are not authenticated, are

14

hearsay, contain erroneous statements by a prior outside counsel, and their probative value is outweighed by the prejudicial nature. Plaintiff opposes the motion, noting that these documents were accompanied by a declaration of a records custodian of a government agency, and are not hearsay as they are either business records or statements by an attorney duly representing a party opponent.

The Eleventh Circuit has stated that district courts must make determinations on a case by case basis whether to admit EEOC documents in a discrimination case before a jury. Barfield v. Orange County, 911 F.2d 644, 650 (11th Cir. 1990). The relevant factors are whether the documents contain legal conclusions in addition to factual content, whether questions of trustworthiness are raised pursuant to Fed.R.Ev. 803(8)(c), and whether the evidence presents Rule 403 problems.

This Court concludes that the documents in question at docket entries 66-3 and 66-4 should not be stricken for purposes of the summary judgment. The documents do not contain legal conclusions by the EEOC, but rather consist mostly of the position statement made by then counsel for Defendant to the EEOC in response to Plaintiff's charge of discrimination. These statements are therefore statements attributed to a party opponent and are not hearsay. There is little question about the authentication of the documents from the EEOC, and as such, the Court will not require an EEOC records custodian to appear in person to testify as to the accuracy of her declaration. The motion to strike these documents is denied.

Defendant also seeks to strike Plaintiff's declaration [DE 66-2] as being inadmissible as not based upon personal knowledge and as being in contradiction to her deposition testimony. As to statements that lack personal knowledge, Defendant's

15

position seems justified on some statements but not others.

The Court is well aware of the law regarding declarations contradicting a prior deposition:

> The law in this circuit is that a party cannot give "clear answers to unambiguous questions" in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction. Van T. Junkins and Associates v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir.1984). When this occurs, the court may disregard the affidavit as a sham. Id. at 658-59. We apply this rule sparingly because of the harsh effect this rule may have on a party's case. In addition, we feel that "[t]o allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the ... affiant ... was stating the truth." Tippens v. Celotex Corp., 805 F.2d 949, 953-54 (11th Cir. 1986). Thus, our cases require a court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit. See id. at 954. If no inherent inconsistency exists, the general rule allowing an affidavit to create a genuine issue "even it if conflicts with earlier testimony in the party's deposition," Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893 (5th Cir. 1980), governs.  In these instances, any conflict or discrepancy between the two documents can be brought out at trial and considered by the trier of fact.

Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987).

The Court believes Defendant is correct as to the specific examples of three instances of inherent inconsistency, though none of these affect the summary judgment decision.  See Defendant's Motion at p. 7 [DE 83].  The declaration is not admissible at trial, and Plaintiff's trial testimony can be impeached with the deposition, if inconsistent. Therefore, the Court will deny this motion to strike as essentially moot.

### III.  CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [DE 61] is hereby **GRANTED in part**

        as to the retaliation claims in Counts II, III and VI, and **DENIED in part** as to the age discrimination claim in Count IV;

2. The Court hereby sets trial on the claim in Count IV to begin Tuesday, September 1, 2009 at 9:00am in Courtroom 203E of the United States Courthouse in Fort Lauderdale, Florida;

3. Defendant's Motions to Strike [DE 80 and 83] are hereby **DENIED**;

4. The Court will separately enter an order on the remaining motions later today or tomorrow;

5. Trial will not be in session on Friday, September 4 (hearings), nor Monday, September 7 (Labor Day), but if necessary, may include Friday, September 11, 2009.

    **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 26th day of August, 2009.

_____
JAMES I. COHN
United States District Judge

copies to:

counsel of record as listed on CM/ECF